# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HODAN MURSAL JAMA,

                    **Plaintiff,**

       **v.**                                    **Case No. 24-cv-583**

LINNISA WAHID, et al.,

                    **Defendants.**

## ORDER

### 1. Procedural History

On May 13, 2024, Plaintiff Hodan Mursal Jama filed a complaint against defendants U.S. Secretary of State Antony Blinken and Deputy Chief of Mission of the U.S. Embassy in Zambia, Linnisa Wahid. (ECF No. 1.) Jama seeks to compel Defendants to adjudicate her husband's I-130 visa application. (*Id.*, ¶ 1.) Jama brings the following claims: unreasonable delay under the Administrative Procedure Act (APA), mandamus relief under the Mandamus Act, and Due Process violations under the Fifth Amendment. (*Id.*, ¶¶ 24-40.) On October 3, 2024, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.)

All parties have consented to the jurisdiction of this Court. (ECF Nos. 2, 5.) The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. The motion is fully briefed and ready for resolution. (ECF Nos. 13, 14, 17, 20.)

## 2. Legal Background

The Immigration and Nationality Act ("INA") governs the admission of noncitizens into the United States. 8 U.S.C. § 1101, *et seq*. A U.S. citizen seeking to bring an immediate relative to the United States must file a Form I-130 petition for a family-based immigrant visa with the United States Citizenship and Immigration Service ("USCIS"). 8 U.S.C. § 1154(a)(1); 8 C.F.R. § 204.2. The visa applicant bears the burden of establishing her eligibility to receive the visa. 8 U.S.C. § 1361.

Once the USCIS approves the Form I-130 petition, it will transfer the case to the beneficiary's Department of State's National Visa Center for pre-processing. U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited January 29, 2025). The National Visa Center will ensure the application is documentarily complete and then schedule the beneficiary for an interview with a consular officer in the country where the beneficiary is located. *Id.*

The beneficiary then attends an in-person interview with the consular officer. 8 U.S.C. § 1202(h). The consular officer will review and adjudicate the beneficiary's application. 8 U.S.C. § 1202(d); 8 U.S.C. § 1201(a)(1).

When the application is complete, the consular officer must either issue a visa or refuse the application. 22 C.F.R. § 42.81(a). The consular officer must base a refusal on legal grounds. *Id.* One ground for refusal is set forth in INA section 221(g), which states that refusal is necessary if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa" or that "the application fails to comply with the provisions" of the INA or the State Department's regulations. 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a) (refusal must be based in legal grounds, such as INA § 221(g)).

When a consular officer refuses an application, he or she must inform the intended beneficiary of the grounds of ineligibility and whether there is a mechanism to overcome the refusal. 8 U.S.C. § 1182(b)(1); 22 C.F.R. § 42.81(b); 8 C.F.R. § 214.2(k)(4).

If the consular officer refuses the application but requests additional information, the applicant has a year from the refusal date to submit additional information. 22 C.F.R. § 42.81(c)-(e) ("If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."). If the applicant "present[s] additional evidence to attempt to overcome [the] prior refusal, [the consular

officer] should re-open and re-adjudicate the case[,] … determining whether the applicant is eligible for a visa." Dep't of State, 9 Foreign Affairs Manual ("FAM") 306.2-2(A).

### 3. Factual Background

The court accepts Jama's well-pled allegations as true for purposes of deciding a motion to dismiss and draws all reasonable inferences in Jama's favor. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). The court also considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Concepts Design Furniture, Inc. v. Fisherbroyles, LLP*, No. 22-2303, 2023 WL 2728816, at *1 (7th Cir. Mar. 31, 2023) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Jama sought to obtain lawful permanent resident status for her husband, Mahamed Hussein Jama, so he could join her in the United States. (ECF No. 1, ¶ 19.) Accordingly, Jama filed an I-130 petition with USCIS on behalf of her husband in November 2021. (*Id.*, ¶ 17.) USCIS approved the petition in December 2022. (*Id.*, ¶ 18.)

In November 2023, Jama's husband had his interview with the U.S. embassy in Zambia. (ECF No. 1, ¶ 20.) After the interview, her husband learned that the case was placed in administrative processing under INA § 221(g). (*Id.*, ¶ 21.) He received a letter that stated, "Your immigrant visa application has been refused under section 221(g) of the [INA]" and had a marked box under the bold heading "Administrative Processing"

stating, "Your case requires additional administrative processing. We will inform you as soon as the processing is complete." (ECF No. 14-1.)[1] The letter directed Jama's husband to upload the requested documents and instructed him on how to do so. (*Id.*)

At some point (it is unclear when), the State Department's Consular Electronic Application Center website updated Jama's application status to "Refused," with the following explanation:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed.

Search results for "LUS2023754001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited January 29, 2025).[2]

The U.S. Department of State's website on visas has a page outlining the interview process for the U.S. Embassy in Zambia. U.S. Dep't of State, Bureau of Consular Affairs, *U.S. Embassy Lusaka, Zambia - LUS*, https://travel.state.gov/content/travel/en/us-

___

[1] This document is central to the complaint and referred to in it (ECF No. 1, ¶ 21), and is therefore properly considered in a motion to dismiss. *See Concepts Design Furniture, Inc.*, 2023 WL 2728816, at *1.
[2] The Court takes judicial notice of the government websites referenced by the parties (ECF No. 14 at 3-4; ECF No. 14 at 3, 8) and reflecting information central to this action. *See* Fed. R. Evid. 201; *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

visas/Supplements/Supplements_by_Post/LUS-Lusaka.html (last visited Jan. 29, 2025).

It explains Jama's situation this way:

> **After Your Visa Interview**
>
> …
>
> **If more information is needed**[:]
>
> Sometimes a consular officer is unable to make a decision on a visa application because he/she needs to review additional documents or the case requires further administrative processing. *When additional documents are requested*, the consular officer will give you a refusal letter that asks you to submit additional documents. The letter will include instructions on how to send those documents to the embassy.
>
> *Administrative processing* takes additional time after the interview. Most administrative processing is resolved within 60 days. However, the timing varies based on the circumstances of each case. Before inquiring about the status of administrative processing, please wait **at least 60 days** after your interview.

*Id.* (emphasis in original).

Since the interview in November 2023, Jama and her husband "have inquired as to the status of [the] visa application on numerous occasions." (ECF No. 1, ¶ 23.) They have "received no meaningful responses" or further adjudication of their case. (*Id.*)

### 4. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), "a [petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 5. Analysis

In moving to dismiss Jama's complaint, Defendants argue that judicial review of the consular officer's visa application decision is barred by both the doctrine of consular nonreviewability and 5 U.S.C. § 701(a)(2). (ECF No. 13 at 1-2.) In the alternative, Defendants contend the complaint fails to allege a claim for relief under the Administrative Procedure Act and Jama's mandamus claim must be dismissed as duplicative of the APA claim. (*Id.* at 2.) Finally, Defendants argue Jama cannot state a claim under the Due Process clause because she lacks a protected interest. (*Id.* at 2, 14.)

#### 5.1 Consular Nonreviewability

Consular officers have exclusive authority to review visa applications. 8 U.S.C. §§ 1104(a), 1201(a). "[T]he general rule [is] that decisions 'to issue or withhold a visa' are not reviewable in court 'unless Congress says otherwise.'" *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Dep't of State v. Munoz*, 602 U.S. 899, 907-08 (2024). "The Immigration

and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus … the federal courts cannot review those decisions." *Munoz*, 602 U.S. at 908.

The consular nonreviewability doctrine applies "even to suits where a plaintiff seeks to challenge a visa decision indirectly." *Matushkina*, 877 F.3d at 294-95. "Courts are not required to take a plaintiff's word that she is not challenging the visa denial." *Id.* "Plaintiffs cannot shield their claims from the doctrine of consular nonreviewability by 'repackaging their substantive complaints as procedural objections.'" *Pak v. Biden*, 91 F.4th 896, 901 (7th Cir. 2024) (quoting *Doe v. McAleenan*, 926 F.3d 910, 911 (7th Cir. 2019)) (finding the plaintiffs' claims were an "'indirect attack' on the visa denial" because the claims could not "be divorced from a substantive challenge to the Executive's discretionary decision").

The consular nonreviewability doctrine is a recognition that "Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Pak*, 91 F.4th at 900 (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019)). However, the doctrine does not necessarily apply to procedural issues of unreasonable delay. "In contrast to the inherently political nature of decisions regarding who should (and should not) be admitted into the United States, the question whether a consular officer has engaged in unreasonable delay in considering an application is not 'an area in

which … issues are inappropriate for judicial determination.'" *Al-Gharawy*, 617 F. Supp. 3d at 12-13 (quoting *Saavedra Bruno*, 197 F.3d at 1160). Where "an agency fail[s] to take a discrete agency action that it is required to take," "a court can compel the agency to act" under § 706(1), even where the court "has no power to specify what the action must be." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004) (emphasis omitted); *cf. Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) (noting the government's argument "confus[ed] its discretion over *how* it resolves the applications … with its discretion over *whether* it resolves them" (emphasis added)).

Jama seeks to compel agency action based on the consular officer's alleged unreasonable delay in resolving her husband's visa application. (ECF No. 1 at 6-7); 8 U.S.C. § 1202(d); 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) ("The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed."). Defendants argue that a consular officer's section 221(g) refusal is a final decision to deny the visa and bars the court from reviewing Jama's unreasonable delay claims. (ECF No. 13 at 8.) Jama responds that the section 221(g) refusal of her husband's visa application was for administrative processing and is not a final decision, and thus the consular nonreviewability doctrine does not bar judicial review. (ECF No. 14 at 11.)

Federal courts are divided on the application of consular nonreviewability to allegedly non-final visa decisions. *Compare, e.g., Ebrahimi v. Blinken*, No. 23-cv-3867, 2024

WL 2020038, at *8 (N.D. Ill. May 3, 2024) (consular nonreviewability does not apply to section 221(g) refusal), *and Al-Gharawy*, 617 F. Supp. 3d at 12 (same), *and Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (finding a letter citing section 221(g) did not constitute a refusal), *with, e.g., Nasir v. United States Dep't of State*, No. 23-C-15738, 2024 WL 4206279 at *3 (N.D. Ill. Sept. 17, 2024) (a section 221(g) refusal is a final adjudication); *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551, at *10 (D.D.C. May 9, 2024) (same), *and Li v. Chertoff*, No. 6-cv-13679, 2007 WL 54197, at *1 (S.D.N.Y. Feb. 16, 2007) (finding consular nonreviewability applies to claims seeking to compel adjudication of delayed visas). But where a consular officer has refused a visa application under section 221(g) and provided "assurances of further adjudication … courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply." *Ebrahimi*, 2024 WL 2020038, at *7.

The INA regulations require a consular officer to "issue the visa [or] refuse the visa." 22 C.F.R. § 42.81(a). The refusal must be on legal grounds, which can include a section 221(g) refusal. *Id*. The refusal procedure prescribes that a consular officer refusing an I-130 spousal visa application must notify the petitioner of the decision, the reason for the refusal, and the right to appeal. 8 C.F.R. § 214.2(k)(4). A consular officer is also under the general direction to "proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

Section 221(g) refusals often present a unique problem whereby the visa is labeled "refused" but the refusal exists only in form and not substance. A consular officer will refuse a visa under section 221(g) where "it appears to the consular officer that the alien is ineligible to receive a visa" or "it appears the applicant failed to comply" with the INA. 8 U.S.C. § 1201(g). Often, after the applicant's interview, the consular officer will hand the applicant a letter explaining that his application has been refused—or even "temporarily refused"—under section 221(g) for administrative processing and that the embassy will provide another adjudication once processing is complete. *See, e.g., Vang v. Franceschi*, No. 24-cv-609, 2024 WL 4370855, at *2 (E.D. Wis. Oct. 2, 2024); *Ebrahimi*, 2024 WL 2020038, at *2; *Zadeh v. Blinken*, No. 23-cv-3721, 2024 WL 2708324, at *2 (N.D. Ill. May 29, 2024); *Al-Gharawy*, 617 F. Supp. 3d at 6; *Lee*, 2024 WL 639635, at *2; *Khazaei v. Blinken*, No. 23-1419, 2023 WL 6065095, at *2 (D.D.C. Sept. 18, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 96 (D.D.C. 2020); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 284-85 (D.D.C. 2016); *see also Ebrahimi*, 2024 WL 2020038, at *5 (collecting cases); *but see, e.g., Baaghil v. Miller*, 1 F.4th 427, 431 (6th Cir. 2021) (concerning a section 221(g) refusal for applicants whom consular officials were suspicious "were not who they said they were" and whose applications were sent to USCIS for revocation). These "refusals" are often followed by a visa being issued, although sometimes the applicants are left waiting indefinitely for a response.

Much of Defendants' argument broadly addresses the doctrine of consular nonreviewability while ignoring the specific issue presented by this unique scenario under section 221(g). (ECF No. 13 at 6-9.) Defendants argue section 221(g) refusals are no different from other visa refusals because the consular officers do all that the statute requires when they refuse a visa application under section 221(g). (ECF No. 17 at 2); *see also Nasir v. United States Dep't of State*, No. 23-c-15738, 2024 WL 4206279, at *3 (N.D. Ill. Sept. 17, 2024) (finding same); (ECF No. 17 at 3-5 (collecting non-controlling cases on one side of split of authority).)

Defendants' argument ignores that the consular officer must fully adjudicate the visa application and the agency must "*conclude* [the] matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b) (emphasis added); 8 U.S.C. § 1202(d). The INA regulations on immigrant visa refusals also direct that, when "a visa is refused, and the applicant … produces evidence tending to overcome the ground of ineligibility … the case *shall* be reconsidered." 22 C.F.R. § 42.81(c)-(e) (emphasis added); Dep't of State, 9 FAM 306.2-2(A) (if the applicant "present[s] additional evidence to attempt to overcome [the] prior refusal, [the consular officer] should re-open and re-adjudicate the case[,] … determining whether the applicant is eligible for a visa").

Recognizing the non-final nature of many of these section 221(g) "refusals," cases that address section 221(g) refusals that are "followed by assurances of further adjudication … overwhelmingly conclude the doctrine of consular nonreviewability

does not apply." *Ebrahimi*, 2024 WL 2020038, at *7. Several courts within the Seventh Circuit have noted as much. *See id.*; *Zadeh*, 2024 WL 2708324, at *4-5; *Vang*, 2024 WL 4370855, at *8; *cf. Al Khader v. Blinken*, No. 18-cv-1355, 2021 WL 678701, at *1 (N.D. Ill. Feb. 22, 2021) ("[Procedural] relief … might be available without running afoul of the consular nonreviewability doctrine."); *but see Nasir*, 2024 WL 4206279, at *3. When the State Department uses language such as "you *will* receive another adjudication once [administrative] processing is complete," the "use of 'will' … all but guarantees … another adjudication …." *Barazandeh v. U.S. Dep't of State*, No. 23-1581, 2024 WL 341166, at *5 (D.D.C. Jan. 30, 2024) (emphasis in original).

"[T]he [court's] focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine." *Vulupala*, 438 F. Supp. 3d at 98. The word "refusal" is "not a get-out-of-review-free card." *Al-Gharawy*, 617 F. Supp. 3d at 16. "At the motion to dismiss stage, the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" *Id.* (alteration in original) (quoting *Vulupala*, 483 F. Supp. 3d at 98).

As in the cases cited above where courts found section 221(g) refusals were not final, although Jama's husband was told his application was refused, he was promised

further adjudication once administrative processing was complete. (ECF No. 14-1); search results for "LUS2023754001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited January 29, 2025) ("You will receive another adjudication once such processing is complete."). He has received no update on his application in the 14 months since. (ECF No. 1, ¶¶ 20-21, 23.)

Furthermore, Jama's husband never received the process that coincides with a visa refusal: he never received a notice of the refusal stating the mechanisms to overcome it. *See* 8 C.F.R. § 214.2(k)(4) (refusal procedure); *Patel*, 134 F.3d at 932 (finding the lack of a refusal stating available relief pursuant to refusal procedure indicated there was no final refusal under section 221(g)). Nor is there any indication his application was sent to USCIS for revocation to indicate the agency reached a final decision. This further suggests the lack of finality of Jama's husband's "refusal" letter.

Moreover, the embassy's webpage expresses the lack of finality in Jama's husband's situation; it explains that, after an interview:

> Sometimes a consular officer is **unable to make a decision** on a visa application because he/she needs to review additional documents or the case requires further administrative processing. ***When additional documents are requested*, the consular officer will give you a refusal letter that asks you to submit additional documents.** The letter will include instructions on how to send those documents to the embassy.

U.S. Dep't of State, Bureau of Consular Affairs, *U.S. Embassy Lusaka, Zambia - LUS*, https://travel.state.gov/content/travel/en/us-

visas/Supplements/Supplements_by_Post/LUS-Lusaka.html (last visited Jan. 29, 2025) (bold added); *see also* (ECF No. 14-1). The Visa Status Check further states, "If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." Search results for "LUS2023754001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited Jan. 29, 2025).

These government websites further support Jama's contention that the refusal was not final: the consular officer was "unable to make a decision" on Jama's husband's visa application until the officer reviewed additional documents; but Jama's husband "[would] receive another adjudication once [administrative] processing [was] complete." Search results for "LUS2023754001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited Jan. 29, 2025); *see also Billoo v. Baran*, No. 21-c-5401, 2022 WL 1841611, at *2-4 (C.D. Cal. Mar. 18, 2022) ("[T]he Department of State's own statements and instructions on their website … demonstrate that [the applicant] has not received a final determination on his visa application."). Jama and her husband have not received such an adjudication. (ECF No. 1, ¶ 23.) "[T]hat ongoing adjudication means that no final decision has been made that would implicate the doctrine of consular nonreviewability." *Ebrahimi*, 2024 WL 2020038 at *7.

Jama's complaint sufficiently alleges that the consular officer has not "conclude[d] [the] matter" of adjudicating whether to "issue the visa [or] refuse the visa." 5 U.S.C. § 555(b); 22 C.F.R. § 41.121(a). Thus, the doctrine of consular nonreviewability does not bar Jama's unreasonable delay claims. The Defendants' motion to dismiss on grounds of consular nonreviewability will be denied.

**5.2 Section 702(a)(2)**

Defendants similarly (and briefly) argue that § 701(a)(2) of the APA precludes judicial review of the consular officer's visa decisions. (ECF No. 13 at 5-6.) While § 706(1) permits courts to compel agency action unlawfully withheld or unreasonably delayed, § 701(a)(2) states that that provision is not applicable "to the extent … agency action is committed to agency discretion by law."

This argument is much like Defendants' consular nonreviewability argument and similarly fails. First, § 701(a)(2) does not serve as a complete bar to judicial review. *See Morfin v. Tillerson*, 851 F.3d 710, 711 (7th Cir. 2017) ("[Section] 701(a)(2) 'is no more a limit on subject-matter jurisdiction than are doctrines of absolute and qualified immunity, statutes of limitations, and many other rules that prevent courts from deciding whether the defendant acted properly.'" (quoting *Builders Bank v. FDIC*, 846 F.3d 272, 275 (7th Cir. 2017))). Second, Defendants again confuse a consular officer's discretion over *how* to resolve a visa application with *whether* to resolve it. The amount of time a consular officer takes to resolve a visa application, unlike the substantive

decision itself, is not committed to agency discretion by law. As explained above, Jama properly alleges that the agency has not adjudicated, as it must, her husband's visa application. Thus, § 701(a)(2) does not bar judicial review of Jama's claims.

### 5.3 Failure to State a Claim

#### 5.3.1 Mandamus Relief

District courts have the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). For the court to grant the writ, a plaintiff must demonstrate: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)).

As the court noted in *Ebrahimi v. Blinken*, "[i]n this case, the third element is determinative, for the court may grant [the plaintiff] the same remedy—compelling the adjudication of [the visa] application—via injunctive relief under the APA." 2024 WL 2020038, at *8; *see also* 5 U.S.C. § 706(1). "[W]here relief sought via mandamus is duplicative of that sought under the APA, the court must dismiss the petition for writ of mandamus." *Ebrahimi*, 2024 WL 2020038, at *8 (collecting cases finding same); *see also*

*Pinnaka v. United States*, No. 24-cv-86, 2024 WL 4252776, at *7 (E.D. Wis. Sept. 20, 2024) (dismissing mandamus allegations as duplicative of APA claim).

Because Jama may (and does) seek to compel the same action under the Administrative Procedure Act as she seeks to compel via mandamus, the Court dismisses Jama's claim for a writ of mandamus (ECF No. 1 at 7-8) as duplicative.

### 5.3.2 Administrative Procedure Act—Unreasonable Delay

The Administrative Procedure Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A plaintiff is entitled to relief under § 706(1) if he "asserts an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64. Consular officers "must issue … [or] refuse the visa" and "conclude [the] matter" "within a reasonable time." 22 C.F.R. § 42.81(a); 5 U.S.C. § 555(b). This imposes a nondiscretionary duty on consular officers to conclude visa adjudications and, as explained above, Jama sufficiently alleges the agency failed to do so.

Defendants use the analysis set forth in *Telecommunications Research and Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), to argue there has been no unreasonable delay. (ECF No. 13 at 11-14.)

Jama contends the alleged delay cannot be found reasonable as a matter of law because the analysis is case-specific. (ECF No. 14 at 12.) She argues *TRAC* is not an appropriate analysis for immigration cases concerning visa adjudications because there

is insufficient evidence in the administrative record to conduct the analysis, especially at the motion to dismiss stage. (*Id.* at 13-16.) Alternatively, Jama contends the *TRAC* factors favor finding unreasonable delay. (*Id.* at 16-21.)

While the Seventh Circuit has not formally endorsed the *TRAC* analysis, *TRAC* usually guides courts' analyses of unreasonable delay claims, including in visa adjudication matters. *See Ebrahimi*, 2024 WL 2020038, at *9; *see also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions."); *Zadeh*, 2024 WL 2708324, at *9-11 (applying *TRAC* factors to unreasonable delay claim). Courts frequently consider the *TRAC* analysis at the motion to dismiss stage. *Ebrahimi*, 2024 WL 2020038, at *9-10 (collecting cases). However, "[a] claim of unreasonable delay is necessarily fact dependent and … sits uncomfortably at the motion to dismiss stage[;]" courts thus "should not typically … resolve[] [the matter] at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (considering *TRAC* factors).

At the motion to dismiss stage, courts consider the *TRAC* analysis not to decide whether there has been an unreasonable delay but to decide "whether a plaintiff has plausibly alleged a claim of unreasonable delay." *Ebrahimi*, 2024 WL 2020038, at *10 ("[T]he court agrees with defendants… that courts may, of course, undertake such an

analysis, just as they undertake plausibility analyses with respect to all sorts of elements of all sorts of claims.").

The *TRAC* analysis considers that:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citations omitted). These factors are not "ironclad," but "provide[] useful guidance in assessing claims of agency delay." *TRAC*, 750 F.2d at 80.

Together the first and second *TRAC* factors analyze whether there is "sufficient rhyme and reason to explain the Government's response time." *Ebrahimi*, 2024 WL 2020038, at *11 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998395, at *7 (D.D.C. Dec. 20, 2021)). Many courts consider the first *TRAC* factor to be the most important. *See Ebrahimi*, 2024 WL 2020038, at *11 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)); *Lee*, 2024 WL 639635, at *5. Where congress has not provided "'a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable' of its proceedings 'is entitled to

considerable deference.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983)).

"Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Trump*, 585 U.S. at 705 ("The upshot of our cases in this context is clear: 'Any rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained.'" (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976))).

There is no congressionally mandated timeline for resolving visa adjudications. *See Zagnoon v. Blinken*, No. 23-cv-629, 2023 WL 7279295, at *3 (W.D. Wis. Nov. 3, 2023) (citing *Poursohi v. Blinken*, No. 21-cv-01960, 2021 WL 5331446, at *7 (N.D. Cal. Nov. 16, 2021); *Tekle v. Blinken*, No. 21-cv-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)). Jama argues that there are, however, "other indication[s] of the speed with which [Congress] expects the agency to proceed." *TRAC*, 750 F.2d at 80; (ECF No. 14 at 17.) Jama first points to 8 U.S.C. § 1571(b), which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b); *see also* 8

U.S.C. 1572(2) ("The term 'immigration benefit application' means any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act.").

The language "it is the sense of congress" indicates that this provision is "precatory and not binding." 8 U.S.C. § 1571(b); *Ameer v. Schofer*, No. 23-cv-3066, 2024 WL 2831464, at *6 (D.D.C. June 4, 2024) (quoting *Palakuru v. Renaud*, 521 F. Supp. 46, 51 (D.D.C. 2021)); *see also Lee*, 2024 WL 639635, at *6 ("[Section] 1571(b) is aspirational, rather than mandatory."). Thus, § 1571(b) does not supply a "rule of reason" for visa adjudication timing. *TRAC*, 750 F.2d at 80.

Jama also points to a memo from the Secretary of State that advises consular officers to "bear the following in mind as [they] prioritize [their] work": "Consistent with Congressional direction, post should strive to process immediate relative cases … within 30 days." Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021); *see also* Consolidated Appropriations Act, Pub. L. No. 106-113, § 237, 113 Stat. 1501, app. G at 1501A-430 (2000) ("It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens … within 30 days of the receipt of all necessary documents …."); Dep't of State, 9 FAM 504.7-2 ("[L]egislation require[s] that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary

information…. The Department expects all IV units to strive to meet the 30[]-day requirement[].").

The Secretary of State memo is not a binding "[c]ongress[ional] … mandate … in the enabling statute." *TRAC*, 750 F.2d at 80. Its timeline is "aspirational, not mandatory." *Zagnoon*, 2023 WL 7279295, at *3. Thus, the Secretary of State memo also does not supply a "rule of reason" for visa adjudication timing. *TRAC*, 750 F.2d at 80.

While the authorities Jama cites are non-binding, the Court is "mindful that congress has expressed that immigration-benefit applications should be adjudicated within six months," *Barrios Garcia*, 25 F.4th at 454, and that department policy is to "strive to process" immediate relative visa applications within 30 days. Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021). But the unreasonable delay analysis "does not rise and fall" on those timelines. *Barrios Garcia*, 25 F.4th at 454.

"When there is no 'congressionally supplied timeframe,' courts typically look to case law for guidance.'" *Ebrahimi*, 2024 WL 2020038, at *11 (quoting *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021)). While there are no bright-line timelines in this case-specific context, "courts 'have generally found that immigration delays in excess' of five years are unreasonable, 'while those between three and five years are often not unreasonable.'" *Id.* (quoting *Orozco v. Blinken*, No. 22-cv-5134, 2023 WL 4594377, at *4 (N.D. Ill. July 18, 2023)). "The two-year mark" is typically considered "'the lowest threshold for a finding of unreasonable

delay' in visa processing cases." *Id.* (quoting *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *2 (D.D.C. Feb. 16, 2022).

Jama has waited 14 months for a decision on her husband's visa application. (ECF No. 1, ¶¶ 20, 23.) While this timeframe exceeds the timeline that the Secretary of State and Congress suggest consular officers should strive to resolve applications within, the delay is not so long as to warrant judicial intervention. Jama cites no cases where the court found such a "delay" unreasonable. (ECF No. 14 at 17-18.) The relatively short amount of time passed weighs strongly in favor of the government.

As for the third and fifth *TRAC* factors, Jama alleges she is suffering "significant personal, emotional, and financial hardship" from the delay of "reunification [with] … her husband." (ECF No. 1, ¶ 6.) The stress of the separation worsens her depression and her hypothyroidism condition; her dangerous thyroid hormone levels prevent her from being able to safely start a family with her husband; and her stress contributed to her dropping out of her educational program. (*Id.*, ¶¶ 7-9.) The time difference between where Jama lives and where her husband lives results in Jama's sleep-deprivation and difficulty concentrating at work, which lead to an incident that almost cost her her job. (*Id.*, ¶ 9.) She suffers financially from sending her husband money (he is not authorized to work in Zambia) and covering travel expenses for visits. (*Id.*, ¶¶ 9-10.)

These hardships are not unlike those of many if not all visa applicants. *See Zadeh*, 2024 WL 2708324, at *10 (collecting cases where plaintiffs suffered from emotional turmoil from separation from partner, financial hardship from covering two households' expenses and travel expenses, and hardship from delay in starting a family). Thus, the third and fifth *TRAC* factors only slightly favor Jama. *See id.* at *10-11 (finding the "factors tilt only slightly in [plaintiffs'] favor" because "[o]ther applicants are dealing with like circumstances"); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021) ("The Court is not unsympathetic to [plaintiff's] difficulties. But the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications.").

The fourth *TRAC* factor considers "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants contend this factor favors them because Jama merely "'seek[s] to jump ahead of those without capacity to sue[,]' … 'impos[ing] offsetting burdens on equally worthy' applicants who are 'equally wronged by the agency's delay.'" (ECF No. 13 at 13-14 (quoting *Cohen v. Jaddou*, No. 21-cv-5025, 2023 WL 2526105, at *6 (S.D.N.Y. Mar. 15, 2023), and *In re Barr Labs.*, 930 F.2d 72, 73 (D.C. Cir. 1991)).) Jama responds that there is no evidence of how Defendants process applications, but that applications are not, and cannot be, resolved on a "first-in-first-out basis." (ECF No. 14 at 18-19.)

Some courts find factor four to be of great weight, concluding that relief is improper "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Lee*, 2024 WL 639635, at *6. Others find it is unclear how the agency prioritizes resolving applications. *See Barrios Garcia*, 25 F.4th at 453 (rejecting a first-in-first-out theory).

Indisputably, there is serious backlog for resolving visa adjudications. *See Zagnoon*, 2023 WL 7279295, at *3; U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Interview-Ready Backlog Report* (Oct. 2024), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (noting 363,242 eligible applicants are still waiting to have an interview scheduled). But at the motion to dismiss stage the court lacks sufficient evidence to assess the agency's adjudication process and its effect on other applicants. *See Al-Gharawy*, 617 F. Supp. 3d at 19 ("[T]he Court does not have before it any evidence indicating whether such a reordering would occur here."); *Barrios Garcia*, 25 F.4th at 454 ("At the Rule 12(b)(6) stage, … [d]iscovery is warranted to better assess 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.D. Cir. 2003))); *see also* U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Prioritization*, (Sept. 13, 2021), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-

news-archive/immigrant-visa-prioritization.html (discussing non-linear prioritization method which recognizes that "applicants … are more than just numbers"). Thus, the fourth *TRAC* factor favors neither party.

The sixth *TRAC* factor states that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80. There is currently no evidence of agency impropriety; this factor thus favors neither party.

The 14-month period that has passed does not give rise to an unreasonable delay claim where Jama does not allege she suffered any extreme, unique harm. Even though some of the *TRAC* factors slightly support Jama's claim that there has been an unreasonable delay in the processing of her husband's visa application, she has failed to plausibly allege a claim for unreasonable delay under the Administrative Procedure Act.

Accordingly, Jama's claim under the Administrative Procedure Act is dismissed.

**5.4 Due Process**

Lastly, Jama alleges the Defendants' delay in adjudicating her husband's visa application is a violation of her Fifth Amendment procedural and substantive due process rights. (ECF No. 1, ¶¶ 36-40.) Defendants argue that Jama's constitutional rights have not been violated because she has no liberty or property interest in her husband's application. (ECF No. 13 at 14-15.) Jama responds that she has a right to have the federal

law equitably enforced and has a fundamental right to family unity. (ECF No. 14 at 22-23.)

Jama's counsel, Joshua Goldstein of Goldstein Immigration Lawyers, continues to bring this copy-and-pasted baseless argument around the country and before this Court. The Court's conclusion is unchanged. *See Vang*, 2024 WL 4370855, at *12.

In *Department of State v. Muñoz*, 144 S. Ct. 1812, 1821 (2024), the Supreme Court foreclosed the argument that U.S. citizens have "a fundamental liberty interest in [their] noncitizen spouse being admitted to the country." *See also Gilani v. Bitter*, No. 23-cv-3288, 2024 WL 1839455, at *5 (C.D. Ill. Apr. 26, 2024) ("[T]he theory that individuals have 'a fundamental right to reside in the United States with [their] non-citizen relatives … runs headlong into Congress' plenary power over immigration.'" (quoting *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018))); *Gebhardt*, 879 F.3d at 988 ("[T]he generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members.").

Jama's claim that her "right to family unity" was violated by the adjudication delay preventing her from residing in the United States with her husband thus fails. Accordingly, Jama fails to state a claim for infringement of her substantive due process rights.

The Supreme Court also rejected a plaintiff's claim that she had "a procedural due process right in *someone else's* legal proceeding." *Muñoz*, 144 S. Ct. at 1825 (emphasis in original). And even if such a right existed, it would not be violated here. "[T]he Supreme Court 'long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.'" *Gilani*, 2024 WL 1839455, at *6 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).

Thus, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). "[B]y assuring that Defendants comply with their statutory duties, the Court guarantees due process." *Al-Gharawy*, 617 F. Supp. 3d at 20. Jama fails to state a claim for infringement of her procedural due process rights.

**6. Conclusion**

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 12) for failure to state a claim for a writ of mandamus relief, failure to state a claim under

the Administrative Procedure Act, and failure to state a claim for a Due Process violation is **granted**. Jama's claims are dismissed with prejudice for 12(b)(6) failure to state a claim. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of January, 2025.

WILLIAM E. DUFFIN
U.S. Magistrate Judge